## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

CASSANDRA A.,

                              Plaintiff,

      v.                                    3:21-CV-007
                                              (ATB)

KILOLO KIJAKAZI,
*Acting Commissioner of Social Security*

                              Defendant.

---

PETER A. GORTON, ESQ., for Plaintiff
CANDACE LAWRENCE, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

### MEMORANDUM-DECISION and ORDER

    This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 7).

## I.    PROCEDURAL HISTORY

    On August 28, 2018, plaintiff filed concurrent applications for Child's Insurance Benefits ("CIB") and Supplemental Security Income ("SSI"), alleging disability beginning on January 15, 2015, when plaintiff was 17 years old. (Administrative Transcript ("T") 115–16, 218–25).  Plaintiff's applications were denied initially on October 25, 2018. (T. 115–29).  Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Addison Masengill on February 18, 2020.  (T. 53–83).  At the hearing, the ALJ heard testimony from plaintiff, as well as vocational

expert ("VE") Edmond Calandra.  (*Id.*).  On April 23, 2020, the ALJ issued an order denying plaintiff's claim.  (T. 26–45).  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on November 6, 2020. (T. 1-6).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standard[1]

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

---

[1]"[B]ecause [plaintiff] applied for child disability insurance benefits after reaching adulthood [*i.e*, age 18], [her] application would be determined under the same standards as for adults applying on their own wage records. *DeVizzio v. Comm'r of Soc. Sec.*, No. 1:14-CV-386 (GTS/ESH), 2015 WL 2238155, at *3 & n.4 (N.D.N.Y. May 12, 2015) (citing *Plumley v. Astrue*, No. 2:09-CV-42, 2010 WL 520271, at *3 (D.Vt. Feb. 9, 2010).

2

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps.  However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'"  *Brault*, 683 F.3d at 448.

3

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision.  *Id*.  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony).  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTS

Plaintiff was 22 years old on the date of the administrative hearing.  (T. 59).  She had graduated high school and attended one semester of college.  (T. 58).  Due to her health issues, she was unable to complete her second semester of college.  (T. 74–75).  She also attempted to enroll in massage school, however could not complete the program.  (T. 58–59).  In high school, plaintiff had a 504 plan in place due to her anxiety.  (T. 59).  She was provided one-on-one teaching instruction at the library and/or in her own home.  (T. 59).  Plaintiff had trouble being around other people

without experiencing anxiety, and "couldn't make it through a whole day [in school] without having panic attacks that severely complicated [her] education." (T. 59).  In the twelfth grade, plaintiff had one morning class that she attended at her high school for approximately forty minutes, to which her father brought her and from which he drove her home. (T. 74).  She lived with her father, mother, and 26-year-old brother. (T. 60). Plaintiff had her driver's license, but did not drive long distances or in unfamiliar places due to her panic attacks. (*Id.*).  Her father drove her "mostly everywhere." (T. 60–61).

Plaintiff testified that she suffered from a myriad of conditions that impacted her ability to work, including chronic fatigue, chronic sinusitis, fibromyalgia, migraines, Raynaud's disease, gynecological issues, anxiety, depression, obsessive compulsive disorder ("OCD"), post-traumatic stress disorder ("PTSD"), agoraphobia and chronic pain. (T. 61–71).  She experienced "about 18 migraines a month," each of which lasted the entire day. (T. 63).  In addition to medication, plaintiff treated her migraines with chiropractic care, yoga, stretching, and hot/cold packs. (T. 63–64).  She had tried many different medications to alleviate her migraines, in addition to a monthly injection to prevent them. (T. 63).  She was also attempting Botox treatment. (*Id.*).

For her mental health conditions, plaintiff treated with medication and therapy. (T. 65–66).  She had been hospitalized several times for mental health issues, most recently in 2019. (T. 66).  Her symptoms included anxiety, panic attacks, phobias, self-harm, suicidal ideations, depression, and obsessive though patterns. (T. 67).  At the time of the hearing she was "very, very afraid" to leave her house or travel long distances. (*Id.*).  She testified that she had a panic attack in the car on the way to the

administrative hearing.  (T. 67–68).

Plaintiff testified that she had two close friends, and had not traveled in the last two years.  (T. 68).  She used the internet and listened to audiobooks.  (T. 68–69).  Although she enjoyed reading, her migraines made this difficult.  (*Id.*).  She spent a typical day trying to keep her anxiety and migraines at bay.  (T. 69).  She could do laundry, and cook to a limited extent, although her mother prepared most of her meals.  (*Id.*).  On the days she experienced migraines, plaintiff spent most of the day in bed.  (T. 76).  She did not sleep well, due to her PTSD and anxiety.  (T. 77).  Plaintiff did not see living independently as a realistic possibility for herself.  (T. 70).  Her father worked from home, and plaintiff testified that she came to him "a lot" during the day for help dealing with her panic attacks.  (T. 78).

## IV.   **THE ALJ'S DECISION**

After reviewing the procedural history of the plaintiff's application and stating the applicable law, the ALJ found that plaintiff had not engaged in substantial gainful activity ("SGA") since her alleged onset date.  (T. 31).  At step two of the sequential evaluation, the ALJ found that plaintiff had the following severe impairments: migraine headaches; chronic neck, shoulder and back pain; a history of premenstrual dysphoric disorder with vulvodynia vaginismus; depressive disorder and anxiety disorder.  (*Id.*).  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listed Impairment.  (*Id.*).

At step four, the ALJ found that plaintiff had the RFC for sedentary work, except the work could require no more than occasional climbing of ramps and stairs, stooping, crouching, crawling or kneeling.  (T. 42).  Plaintiff was limited to work that did not

require overhead lifting or reaching, or exposure to heights, ladders, ropes and scaffolds. (*Id.*). She was further limited to no more than incidental exposure to extremes of cold and vibration. (*Id.*). Last, the ALJ limited plaintiff to simple, routine tasks, with no more than occasional contact with co-workers or the general public. (*Id.*).

Next, the ALJ found that plaintiff did not have any past relevant work. (T. 44). However, at step five, using the Medical Vocational Guidelines as a "framework," and the VE's testimony, the ALJ found that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.*). Thus, the ALJ found that plaintiff was not disabled. (T. 44–45).

## V. **ISSUES IN CONTENTION**

Plaintiff raises the following arguments in support of her position that the ALJ's decision is not supported by substantial evidence:

1. The ALJ failed to assess the frequency and duration of plaintiff's migraines and anxiety/panic attacks, along with their impact on plaintiff's ability to maintain acceptable levels of staying on task and/or attendance. (Pl.'s Br. at 9-13) (Dkt. No. 13).

2. The ALJ improperly substituted her lay judgment for undisputed competent medical opinion. (Pl.'s Br. at 13–24).

3. The Appeals council improperly refused new evidence. (Pl.'s Br. at 24–25).

4. The step five determination was based on a hypothetical presented to the VE which failed to appropriately account for plaintiff's limitations regarding staying on task and/or attendance. (Pl.'s Br. at 27).

The Commissioner contends that the ALJ's disability determination is supported by

substantial evidence. (Defendant's Brief ("Def.'s Br.") at 14–25) (Dkt. No. 16).  For the following reasons, this court agrees that the ALJ failed to sufficiently evaluate the persuasiveness of the medical opinions of record in accordance with the new regulations, and remand is therefore warranted.

## DISCUSSION

## VI.  RFC/EVALUATING MEDICAL EVIDENCE

### A.  Legal Standards

#### 1.  RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999)

(citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.    Evaluating Medical Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and

"evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors."  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions."  *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule.  *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.  An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  *Id.* at §§ 404.1520c(c)(2),

10

416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

## B. Application

Plaintiff maintains that the ALJ's evaluation of the opinion evidence and resulting RFC were deficient for failure to adequately assess the combined impact of plaintiff's physical and mental conditions on her inability to meet employer demands for staying on task and/or attendance. The record reflects that the ALJ considered opinions from eight different medical sources in the process of determining plaintiff's RFC. He did not find any of the six medical opinions of record concerning plaintiff's physical limitations to be persuasive. Notably, treating providers Lazarus Gehring, M.D. (primary care physician), Jennifer Brenner, N.P. (neurology), Anne Calkins, M.D. (pain management), and Brian Baldia, D.C. (chiropractic) each opined in a check-box form, among other things, that plaintiff's migraine symptoms would cause her to be absent from work more than four days per month. (T. 1004, 1139, 1143, 1147, 1159). Dr. Gehring, Dr. Calkins and Dr. Baldia further opined that plaintiff's pain, fatigue, diminished concentration or work pace, and/or need to rest would cause her to be off

11

task for more than 33% of the day.[2]  (T. 1004, 1143, 1159).  The ALJ summarily rejected the treating providers' opinions because they were "inconsistent with the evidence of record," including the providers' own treatment notes.  (T. 38–39).  She did not articulate what evidence she relied on in rejecting the treating providers' opinions as to absenteeism and/or time off task.

The ALJ also considered the opinion of internal medicine consultative examiner Gilbert Jenouri, M.D.  (T. 784–87).  Subsequent to his physical examination of the plaintiff, Dr. Jenouri opined that plaintiff had mild restrictions with walking, standing long periods, bending, stair climbing, lifting and carrying.  (T. 787).  The ALJ did not find Dr. Jenouri's opinion persuasive, because it was "not supported by the medical evidence of record."  (T. 36).  The ALJ did not otherwise elaborate on her evaluation of Dr. Jenouri's opinion.  (*Id.*).  Presumably, the ALJ rejected Dr. Jenouri's opinion because she found that the record supported more restrictive limitations than those assessed by the consultative examiner, as evidenced by the ALJ's ultimate RFC determination for modified sedentary work.  (T. 42).  In any event, Dr. Jenouri did not provide an opinion specific to plaintiff's ability to maintain the attendance and/or productivity demands of full-time work.

The only other opinion of record concerning plaintiff's physical limitations is that of state agency medical consultant A. Lee, M.D.  (T. 92–94).  Based on a review of the medical records as of October 11, 2018, Dr. Lee concluded that plaintiff was

---

[2]N.P. Brenner indicated that she was unable to determine the frequency with which plaintiff would be off-task as a result of her symptoms.  (T. 1139, 1147).

capable of performing the full range of light work.  (T. 94).  Dr. Lee noted that plaintiff

could maintain her hygiene, shop, cook, clean and do laundry.  (*Id.*).  The ALJ did not

find Dr. Lee's opinion to be persuasive, because it was "not supported by the medical

evidence of record as a whole."  (T. 36).  Specifically, she concluded that Dr. Lee's

assessment "require[d] modification as the new evidence more accurately reflects the

current state of the [plaintiff's] impairments."  (*Id.*). The ALJ did not assess the issues

of absenteeism and/or time of task with respect to Dr. Lee's opinion.

The two remaining medical opinions of record speak to plaintiff's limitations as

imposed by her mental health conditions.  On September 28, 2018, Amanda Slowik,

Psy. D. performed a psychiatric consultative examination of the plaintiff.  (T. 788–92).

Based on her examination, Dr. Slowik opined that plaintiff was unlimited in her ability

to understand, remember, and apply simple and complex directions and instructions;

use reason and judgment to make work-related decisions; maintain personal hygiene;

and be aware of normal hazards.  (T. 791).  She further opined that plaintiff was mildly

limited in her ability to interact adequately with supervisors, coworkers and the public

and to sustain concentration.  (*Id.*).  Dr. Slowik also assessed that plaintiff's ability to

sustain an ordinary routine was moderately limited.  (*Id.*).  Last, the consultative

examiner opined that plaintiff's ability to regulate her emotions was moderately to

markedly limited.  (*Id.*).  She concluded that plaintiff's difficulties were caused by

distractibility, anxiety, depression and fatigue.  (*Id.*).

The ALJ did not find Dr. Slowik's opinion persuasive, because it was

"inconsistent with the evidence of record."  (T. 40).  The ALJ elaborated that although

Dr. Slowik was familiar with disability program policies and evidentiary requirements, her assessment seemed to be based on plaintiff's subjective allegations rather than objective findings during the mental status examination. (*Id.*). The ALJ further stated that, "functionally," plaintiff could maintain her hygiene, manage her money, cook, clean, and do laundry, dependant upon her physical pain; and could socialize, "ha[ve] hobbies," and drive herself to appointments. (T.40).

The only opinion of record the ALJ found "persuasive" was that of state agency medical consultant L. Blackwell, Ph.D. However, in evaluating Dr. Blackwell's opinion the ALJ did not refer to or assess the medical consultant's mental residual functional capacity assessment (T. 109–11), but instead relied upon Dr. Blackwell's evaluation of the "B" criteria relevant to step three of the sequential evaluation, indicating that plaintiff had no limitations in adapting or managing herself; mild limitations in understanding, remembering or applying information and interacting with others; and moderate limitations in concentrating, persisting or maintaining pace (T. 40, 90–91). The ALJ attributed the persuasiveness of Dr. Blackwell's opinion to its "support[ ] by the medical evidence of record as a whole," and Dr. Blackwell's "understanding of the disability program policies and evidentiary requirements." (T. 40). The evaluation lacked any discussion of the issues surrounding plaintiff's risk for work-preclusive absenteeism and/or time off task.

Plaintiff contends that the ALJ improperly substituted her lay opinion for "undisputed competent medical opinion" – arguing that the only opinions of record to actually assess (and ultimately find work-preclusive) plaintiff's limitations as to time

14

off task and/or absenteeism were rejected.  Thus, plaintiff argues, the ALJ had no medical basis to conclude that plaintiff was not burdened by such limitations.

However, state agency medical consultant Dr. Blackwell concluded that plaintiff had the RFC to perform the "basic mental demands of unskilled work." (T. 96).  RFC is defined as the ability to perform physical or mental work activities on a *sustained basis* notwithstanding limitations for the collective impairments. *Marcano v. Comm'r of Soc. Sec.*, No. 20-CV-4230, 2021 WL 5315703, at *3 (S.D.N.Y. Nov. 16, 2021), *report and recommendation adopted*, 2022 WL 253083 (S.D.N.Y. Jan. 26, 2022) (emphasis added); *Shelley v. Comm'r of Soc. Sec.*, No. 1:18-CV-697, 2019 WL 4805023, at *2 (W.D.N.Y. Oct. 1, 2019) (citing 20 C.F.R. § 404.1520(e)-(f)).  State agency experts are instructed to assess the plaintiff's work-related functions "on a sustained basis," which includes the ability to work an eight-hour day for a five-day week. (Program Operations Manual System ("POMS") §§ DI 24510.001A.3.a, DI 24510.004C.2.b, DI 24510.050; *see also* POMS DI § 24510.006 (directing state agency physicians to follow Social Security Ruling ("SSR") 96-8p); SSR 96-8p, 1996 WL 274184, at *1 (July 2, 1996) (defining work on a *regular and continuing basis as eight hours per day, five days per week*)).  Thus, one may infer, from Dr. Blackwell's opinion, the conclusion that plaintiff is able to perform work on a sustained basis and meet a schedule.  *See Ana C.M. v. Kijakasi*, No. 3:20-CV-296 (DEP), 2021 U.S. Dist. Lexis 138352 at *18 (N.D.N.Y. July 23, 2021) (noting that the POMS allow the court to "infer that those state agency consultants concluded plaintiff is able to perform on a sustained basis and meet a schedule.").  In this case, then, it follows that the ALJ was

not without *any* opinion of record concluding that plaintiff did not require additional limitations for absenteeism and/or time off task, at least from a mental health perspective. *See Amber H. v. Saul*, No. 3:20-CV-490 (ATB), 2021 WL 2076219, at *5 (N.D.N.Y. May 24, 2021) (It is well settled that, under both the old and new regulations concerning the evaluation of medical evidence, an ALJ may rely on the opinion of a non-examining state agency consultant in disability claims.).

Although the ALJ was permitted to consider Dr. Blackwell's implicit opinion that plaintiff could perform work on a sustained basis, the issue of whether that opinion constituted substantial evidence for the ALJ's ultimate determination is a different issue.  The record clearly reflects that plaintiff suffered from chronic migraines.  Her four treating providers agreed that plaintiff would be absent more than four days a month due to the effects of her migraines.  These opinions are not inconsistent with the totality of the medical evidence.  Plaintiff's treatment  records consistently report her ongoing complaints, and providers' observations, of chronic headaches, occurring on a daily basis with at least one weekly "severe" headache which could last several days. (T. 323, 326, 328, 330, 332, 335, 337, 342, 349, 561, 564, 567, 571, 574, 624, 634, 650, 654, 657, 696, 795, 801, 805, 811, 989, 991, 997, 999, 1042, 1045, 1182).

There is also evidence that the combined effects of plaintiff's migraines with her other medical conditions, including anxiety, created substantial obstacles for plaintiff in terms of her daily functioning. On September 8, 2017, Dr. Calkins observed plaintiff upon physical examination to appear "abnormal, chronically ill, underweight, . . . tired [and] pale."  (T. 562).  At a March 14, 2018 follow-up visit concerning plaintiff's

migraine headaches, Dr. Calkins observed that plaintiff became tearful at different points, and had "completely decompensated" since her last visit.  (T. 569).  Plaintiff had recently dropped out of college and stopped working.  (*Id.*). Plaintiff presented to the emergency department on several occasions for her migraines and anxiety between 2018 and 2019.  (T. 1116, 1183, 883, 891).  At a follow-up appointment with her primary care provider on June 27, 2019, plaintiff complained of stomach pains and diarrhea, along with anxiety, panic attacks and chronic headaches.  (T. 1104).  The note reflects that plaintiff was "pulling her hair, [couldn't] eat," and was "pacing the floor." (T. 1104).  At that point, NP Welch assessed plaintiff to be "severely unstable," and determined that she should be taken to CPEP.[3]  (T. 1105).

Although the ALJ rejected the restrictive opinions of plaintiff's treating providers, it is unclear what evidence she relied on in determining that plaintiff's limitations for attendance and productivity were not work-preclusive.  Dr. Jenouri did not assess plaintiff's limitations for time off-task or absenteeism, but limited his medical source statement to plaintiff's capacity for walking, standing bending, climbing, lifting and carrying.  (T. 36).  Moreover, the ALJ did not find Dr. Jenouri's opinion persuasive. (*Id.*).  State agency medical consultant Dr. Lee did conclude that plaintiff was physically capable of performing the full range of light work, but the ALJ rejected the medical consultant's opinion, concluding that the evidence of record supported more substantial limitations.  (*Id.*).  The ALJ presumably concluded that the greater limitations reflected in the record did not prevent plaintiff from performing the

---

[3]CPEP stands for Comprehensive Psychiatric Emergency Program.

modified sedentary work as described in the RFC determination.  However, the ALJ

failed to marshal any significant medical evidence indicating that plaintiff's limitations

for time off task and absenteeism were not, as her four treatment providers opined,

sufficiently severe to preclude work on a sustained basis.  *See Elizabeth P. v. Comm'r*

*of Soc. Sec.*, No. 3:20-CV-891 (CFH), 2022 WL 507367, at *14 (N.D.N.Y. Feb. 18,

2022) (Findings related to time off-task or absenteeism present "analytical difficulty

because neither . . . can be readily confirmed or dispelled just by examining treatment

notes or objective criteria . . . [but] rest in some substantial part on the black box of the

treating providers' experience with the plaintiff's various conditions.") (citation

omitted).

        The court's ability to determine how the ALJ reached her RFC conclusion as to

absenteeism and time off task is further impaired by the ALJ's deficient evaluation of

the persuasiveness of the medical opinions.  Under the new regulations, it was

incumbent upon the ALJ to articulate how she considered the supportability and

consistency of the medical opinions. The "articulation requirements in these final rules

will allow a subsequent reviewer or a reviewing court to trace the path of an

adjudicator's reasoning, and will not impede a reviewer's ability to review a

determination or decision, or a court's ability to review [the Commissioner's] final

decision." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR

5844-01.

        In this case, the ALJ's evaluation of the majority of the opinion evidence of

record failed to sufficiently consider the supportability and consistency factors.  For

example, in rejecting the opinion of each treating provider as inconsistent with the record, the ALJ cited to limited, cherry-picked treatment notes indicating plaintiff's normal examination findings, and ignored those portions of the record that addressed plaintiff's limitations.  (T. 38–39).  *See Colgan v. Kijakazi*, 22 F.4th 353, 362 (2d Cir. 2022) (an ALJ may not cherry-pick particular instances of improvement from treatment notes to create an inconsistency); *see also Vellone v. Saul*, No. 1:20-CV-261, 2021 WL 319354, at *9 (S.D.N.Y. Jan. 29, 2021) (finding the ALJ "cherry picked treatment notes that supported his RFC determination while ignoring equally, if not more significant evidence in those same records.").  The ALJ further failed to apply or even consider the supportability factor as to plaintiff's treating providers, as there is no discussion of what evidence each used to support their opinions and reach their ultimate conclusions.

Moreover, the ALJ's evaluation of the Dr. Blackwell's opinion, the only opinion of record relied on by the ALJ which supports her RFC determination, is weak at best. The ALJ merely concluded that Dr. Blackwell's opinion was "supported by the medical evidence of record as a whole."  (T. 40).  The lack of any further explanation as to the consistency between Dr. Blackwell's opinion and the medical evidence is problematic. For example, the ALJ did not address the conflicting evidence of record post-dating Dr. Blackwell's opinion, including plaintiff's numerous visits to the emergency department and CPEP for severe anxiety in 2019.  Nor did the ALJ reconcile Dr. Blackwell's rather implausible conclusion that plaintiff had no limitations for adapting or managing herself with the longitudinal medical record, including Dr. Slowik's opinion that plaintiff's ability to regulate her emotions was moderately to markedly limited, and Dr.

19

Gehring's restrictive opinion as to the work-preclusive symptoms of plaintiff's depression and migraines.  The ALJ's failure to explain his assessment of the opinion was legal error.  *Jaleesa H. v. Comm'r of Soc. Sec*., No. 1:20-CV-01180, ⸺ F. Supp. 3d ⸺, 2022 WL 174337, at *6 (W.D.N.Y. Jan. 18, 2022) ("the ALJ did not *explain* anything - instead, he made a conclusory statement that Dr. Fabiano's opinion was 'generally consistent and supportive,' without any explanation of how he assessed the opinion in connection with the consistency and supportability factors which, as explained above, is required by the new regulations"); *see Melissa S. v. Comm'r Soc. Sec*., No. 5:21-CV-420, 2022 WL 1091608, at *4 (N.D.N.Y. Apr. 12, 2022) ("the ALJ does nothing more than state that the opinion is inconsistent with the record but offers no explanation as to how that is true").

"Meaningful review is frustrated where the ALJ fails to provide sufficient analysis to permit th[e] [c]ourt to glean the rational[e] supporting his RFC determination." *Tavion T. v. Comm'r of Soc. Sec*., No. 20-CV-514, 2021 WL 1559243 at *4 (W.D.N.Y. Apr. 21, 2021). On this record, the ALJ's deficient evaluation of the persuasiveness of the opinion evidence of record, and the absence of any substantial evidence relied on by the ALJ in rebutting the restrictive opinions concerning plaintiff's expected absenteeism and time off task, warrants remand.  Notably, the vocational expert in this case testified that an individual such as plaintiff would be unable to competitively find work if she were to miss more than one day of work per month, or a combination of time out of work exceeding eight hours in one month.  (T. 82).  The VE further testified that plaintiff would be precluded from full-time employment if she was

20

off task more than ten percent of the workday.  (*Id.*).  Thus, the restrictive limitations identified by the treating providers as to absenteeism and/or time off task could have resulted in a finding of disability, or a more restrictive RFC determination, if given proper consideration.

On remand, the ALJ should specifically explain how she considered the supportability and consistency factors as to each medical opinion pursuant to 20 C.F.R. §§ 404.1520c and 416.920c, taking care to support her evaluation with substantial evidence reflected in the longitudinal record.  In doing so, the Commissioner, perhaps in light of additional evidence, may be able to articulate to what extent plaintiff does or does not require any additional limitations as to time off task and/or absenteeism.

## VII.  **NATURE OF REMAND**

Because remand is necessary for further administrative proceedings, this court need not address plaintiff's additional arguments.  See, e.g., *Bell v. Colvin*, No. 5:15-CV-01160, 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13-CV-6844, 2015 WL 2137776, at *28 (S.D.N.Y. May 4, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand").

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the

evidence" is generally appropriate.  *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). This court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and thus, I cannot recommend a remand solely for the determination of benefits.  *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the medical and other evidence, an appropriate determination of plaintiff's residual functional capacity, and other further proceedings, consistent with this Memorandum-Decision and Order, and it is

**ORDERED**, that the Clerk enter judgment for **PLAINTIFF**.

Dated: May 19, 2022

Andrew T. Baxter
U.S. Magistrate Judge